PER CURIAM.
This is the usual action for the recovery of past damages, and to restrain the operation and maintenance by defendants of its elevated railroad in the street upon which plaintiff is an abutting property owner. The court found that the damage to the rental value and occupancy of the premises since the construction of the road was the sum of $300, for which sum it ordered judgment. The court also found that the permanent maintenance of the railroad depreciates the fee value of the premises in the sum of $1,700, which sum it adjudged that defendants pay within thirty days, or to be enjoined and restrained from continuing its railroad. It is claimed that the amount awarded as fee damage is excessive, and is not based upon any fair construction of the proof. This contention presents the only substantial question raised by this appeal.
The property affect is now used, and always has been, as a dwelling house. The lot is 20 feet front by 100 feet in depth, and the building a three-story brick, with a basement. The owners do not occupy the property, but rent the same, and the present lessee uses the house by leasing furnished rooms. Prior to the construction and operation of the railroad, the premises rented for fifty dollars per month. They have rented for forty-five dollars since. The decline is therefore sixty dollars a year. There was evidence tending to show that such depreciation was due in part to other causes than the condition produced by the railroad, and this view seems to have been adopted by the court, as the award for rental damage is at the rate of fifty dollars a year. This being accepted as the basis for past damage, it is at once seen that there is a large and marked disparity between it and the sum awarded as fee damage. The record does not disclose any proof of actual sales or transactions with this property, and no satisfactory knowledge, on the part of the witnesses, of actual transactions with any property in that vicinity appears. The case therefore rested, respecting values, mainly upon its rental value, which was satisfactory established, and upon the opinions of witnesses acquainted with the property and values generally. Two expert witnesses, Thorne and Cook, called by plaintiff, fixed the depreciation in fee value since the construction and operation of the road at from $3,500 to $4,000. Two experts, Eustin and Grace, were called by defendant. The former made the depreciation from $500 to $1,000, and the latter increased its value by $2,000 to $2,500. It is quite apparent, therefore, that the expert testimony furnished very little aid in determining fee damage.
As to Thorne, after he had been examined quite fully, sufficient to exhaust his information, the court felt constrained to say that “he don’t know anything of values in this vicinity.” He was subsequently recalled, and gave some further testimony, and was then permitted to answer respecting fee values. It does not seem *725 to us that his subsequent testimony changed in any essential re" spect his competency to speak upon the subject. But it was not improper to receive his testimony, as- he evidently had some knowledge upon the subject. He stated that there was a recognized ratio between fee and rental values of this kind of property; that in 1885 the rental value was about ten per cent, of the fee value. Cook states that in 1886, two years before the road was constructed, the fair ratio for rental returns would be about twelve years’ purchase,—about eight per cent.,—and the fair ratio at the present time would be ten per cent, gross. Based upon the established rental value and the depreciation therefrom, his testimony shows that the fee damage did not exceed $400 to $500. Taking the whole testimony, it seems clear that the sum fixed as fee damage by these witnesses is quite arbitrary in its character. And the same may be said of the witness Grace, who represented the other extreme. The testimony of Rustin, who places the fee damage at from $500 to $1,000, seems to come much nearer what the actual fact is. His testimony is in substantial harmony with what the rental values establish, and the rental value is the only substantial basis upon which the testimony of the other experts can stand. The court ought to reject the statements of an expert on value when his testimony is at variance with any substantial basis, and can only be supported by the adoption of his arbitrary standard.
We agree with the learned counsel for the respondent that fee damage is most satisfactorily established by ascertaining how the rental values have been effected by the act which interferes with the property. It is only where exceptional circumstances exist that this rule is the subject of exception. Sutro v. Met. E. Railway Co., 137 N. Y. 592; 50 St. Rep. 701; Jamieson v. Kings Co. E. Railroad Co., 147 N. Y. 322; 69 St. Rep. 688. Of course, the inquiry is not limited alone to this, and the whole subject is to be considered as though the property were sought to be condemned by right of eminent domain. But only such damages 93 could . be awarded therein can be considered on this branch of the case, and the subject is not left open to abitrary discretion, but must rest on proof. American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252-270; 41 St. Rep. 531.
Taking the most favorable view of this case in favor of the respondent, we are unable to see how a fee damage is established beyond the sum of $1,000. Of this sum defendants’ proof is susceptible, and they cannot be heard to question the sufficiency of its basis. In this view of the case, we do not see that the defendants will be prejudiced by any of the rulings of the trial court, if we assume that technical error existed therein.
The judgment appealed from should be reversed, unless plaintiff, consents to reduce the sum awarded as fee damages by $700 and interest, in which case the judgment, as modified, is affirmed, without costs to either party. ~ 1
All concur.