1065, 42 N. E.), alludes to the case of Hunter v. Railway Co., 141 N. Y. 281, 36 N. E. 400, and says that it was there decided that:

"The question for the tribunal in each case is whether, by the construction and operation of the elevated railroad, there has been an intrusion upon the complainant's property rights, to his actual prejudice and damage."

Near the close of the opinion the learned judge says:

"It is sufficient to say, in conclusion, that we do not feel compelled by authority, nor upon principle, to hold that the court must grant relief by way of injunction in a case where the plaintiffs are unable to show any actual damage to their property, or loss suffered, by reason of the defendant's acts, and in the face of the fact that, by reason of the presence and operation of the elevated railroad in the street, the value of their property has greatly increased, and that it has shared equally with all the property in the vicinity in the general increase of values which has taken place."

We see nothing in that case inconsistent with the views which we have already expressed, nor anything tending to indicate that if the plaintiff, in the trial of this action, shall establish substantial damages, he may demonstrate the right of recovery.

Having reached the conclusion that the complaint states facts sufficient to constitute a cause of action, we do not deem it necessary to consider the extent of the relief which the plaintiff may be entitled to, nor to determine at this time whether the plaintiff is entitled to any relief as to the block of land mentioned in the complaint lying outside of Alabama street. Those questions can more appropriately be determined when the facts are produced at the trial. Whether an injunction shall issue in a case of this character or not is always addressed to the sound equitable discretion of the court, after consideration of all the facts and circumstances disclosed upon the hearing of the parties; and such discretion can more appropriately be exercised after a trial than upon considering the complaint to which a demurrer has been interposed. We are of the opinion that the demurrer was properly overruled at the special term.

Interlocutory judgment affirmed, with costs, with leave to defendants to answer upon payment of the costs of the demurrer and of this appeal.

(21 App. Div. 548.)

ENO v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. November 5, 1897.)

1. EMINENT DOMAIN—RAILROADS—DAMAGES—EVIDENCE.

In an action against an elevated railroad company for injury to rental value, where plaintiff offers evidence in respect to rental value of neighboring properties for a period subsequent to that covered by the action, for the purpose of furnishing the jury a basis of computation, it is not error to permit defendant, on cross-examination, to show that, during that subsequent period, plaintiff had leased the premises in question for an increased rental.

2. SAME—APPEAL—OBJECTIONS NOT URGED BELOW.

In such an action, the rule excluding evidence of the course of value of specific buildings, other than that directly in question, is not to be applied on appeal, unless the attention of the court at the trial was called by specific statement to the precise ground upon which it proceeds.

Appeal from trial term.

Action by Amos R. Eno against the Manhattan Railway Company and another. From a judgment entered on a verdict for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Wm. Mitchell, for appellant.

Arthur O. Townsend, for respondents.

PATTERSON, J. This is an appeal by the plaintiff from a judgment awarding him nominal damages, and from an order denying a motion for a new trial. The action was brought to recover damages for injuries to the rental value of the property Nos. 82, 84, and 86 South Fifth avenue, in the city of New York, having a frontage of 61 feet on South Fifth avenue, and extending about 150 feet in depth, to Thompson street; it being claimed that substantial injury to the rental value resulted from the presence and operation of the defendants' railway in front of those premises for six years,—that is to say, from 1882 to 1888, both inclusive. The issue submitted to the jury without objection of either party was, as stated by the trial judge, the following:

"The question for you to decide in this action is whether the plaintiff has received any less rental from these premises between the 26th day of April, 1882, and the 26th day of April, 1888, than he would have received for the same period if the defendants' railroad had not been there during that period."

It appeared in evidence that the plaintiff purchased the lots in question in May, 1878. At that time the land was covered with old buildings. About 1880 an agreement was made between the plaintiff and Messrs. McKibbin, pursuant to which the plaintiff constructed a new building, and leased the same to the McKibbins at a rental of $11,500 a year, and for a period of ten years. The lessees were in the occupation of the building during the six years involved in this suit, and presumably paid the rent secured by the lease during all that time. The plaintiff, in order to prove his case, gave some evidence touching the history and course of rental values on South Fifth avenue from 1873 to 1878, in which latter year the elevated railroad was put in operation on that street, and down to about 1890, and also gave evidence of the specific rentals of various pieces of property from 1882 to 1890. No exceptions appear to have been taken to the judge's charge, but there are exceptions to certain rulings of the trial judge which require consideration.

A witness was called on behalf of the plaintiff, who testified from his own knowledge with reference to the rents of the building between April, 1882, and April, 1888. It appeared that the payment of rent for that period was provided for by the agreement or lease above referred to. That lease was produced, on the demand of the defendants' counsel, as being the best evidence, and was put in evidence by the plaintiff upon such demand. It provided for the payment of $11,500 a year up to May 1, 1891; and by that lease it:

was shown that the plaintiff had himself fixed a rent for the whole period of ten years, which could not be advanced or changed by any alteration of conditions in the street or in the property during that period. The defendants, on cross-examination of this same witness, offered in evidence a lease of the same premises between the same lessor and lessee for a period of five years from and after May 1, 1891, at an increased rental of $500, which lease was made, however, on the 20th of March, 1889. An objection was made by the plaintiff to that offer, on the ground that the lease was to take effect after 1888, and that what the rental of the building may have been after 1888 was immaterial, as it referred to a period subsequent to the year 1888, which was the last of the six years embraced in this action. On reading the whole record, it is very clear that this evidence, even if inadmissible, could not have in any way prejudiced the plaintiff or affected the verdict. But, as the plaintiff had made his proof, it was not improper evidence. The plaintiff had given evidence of the rents of some other property of his own on South Fifth avenue as far down as the year 1890. He showed what the premises No. 119 South Fifth avenue rented for down to 1890, two years later than the period covered by this action. He entered upon the inquiry himself, and relied upon evidence of that character. The lease now objected to was introduced on cross-examination, and it was not improper to allow the defendants to show on such cross-examination, with reference to other property belonging to the plaintiff, what the course of rentals of such property was, in view, and only in view, of the fact that the plaintiff had sought to make the rents of No. 119 South Fifth avenue down to 1890 a basis for the computation of damages by the jury. The plaintiff sought and secured the advantage of such evidence. But at all events it is entirely clear that the evidence could not have prejudiced the case before the jury, under the instructions that were given by the trial judge.

It is further objected that evidence declared to be incompetent under the ruling in the Jamieson Case, 41 N. E. 693, and the Witmark Case, 44 N. E. 78, was admitted. This cause was tried four years before the rule in the Jamieson Case was formally promulgated by the court of appeals, and it is fully apparent that both sides conducted the trial without reference to the principle involved in that rule; and we have held that, in all cases of this character, we were not at liberty to apply it unless the attention of the court was called by specific statement to the precise ground upon which it proceeds. We so held in the case of Innes v. Railway Co., 3 App. Div. 541, 38 N. Y. Supp. 286. There have been cases in which the objection was specifically taken, even before the Jamieson Case was decided, and we have enforced it in such cases; but this is not one of them. None of the other exceptions require any special reference.

In view of the state of the evidence, there was no real basis upon which the jury were bound to find a verdict for substantial damages, and the judgment and order appealed from should be affirmed, with costs. All concur.